The 4th District Public Court of the State of Illinois is reconvened. Donald O'Craig, H.G. Armour, presiding. Good afternoon, counsel. Please be seated. And I'll say once again, not representing the whole court, just myself, it's so nice to see live counsel in the courtroom. We're all working. I think you represent the whole court. Now I don't want to be misspeaking. Okay. Next case for this afternoon is 4-25-0264, 65 and 66. Elizabeth Bricker et al. v. Albert August Heinz et al. Could counsel for the appellant please state your name. Gregory Bricker. And I represent Appellant Albert August Heinz, Heinz Funeral Home LLC and Family Care Commission LLC. I'm here with a co-appellant who represents John Clayton Heinz. I'll let him introduce himself. Count Wharton Klein, K-L-E-I-N. Thank you. And gentlemen, will you be dividing your time in a particular way? We will not. All right. Very good. Thank you. Counsel for the appellee. Brad Wilson, plaintiff's Elizabeth Bricker, David Bricker, Dylan Bricker. Counsel for the Woods family, multiple Woods plaintiffs, Joseph Craven, Patrick Sheen. All right. Thank you, counsel. Will you be dividing your time? We will not. All right. Very good. Counsel for the appellant. Please. May it please the court, counsel, again, my name is Gregory Bricker. I represent the appellants, August Heinz, Heinz Funeral Home LLC and Family Care Commission LLC. And I'm here with my co-appellant. Being that John Clayton Heinz has adopted the arguments made in our appellant brief and reply, counsel has deferred the honor of the oral argument to me today. We're here today on our appeal of a decision made by the trial court denying our motion to dismiss pursuant to 2619A9. The main issues on appeal today are did the trial court err in denying the motion to dismiss and did the trial court err in denying the motion to compel arbitration? This involves, in both cases, the Woods and the Bricker cases, an agreement that was signed electronically by one of the plaintiff's agents or representatives that included a clear and prominently presented arbitration clause. It was above the signature line that stated, surely, any claim shall be resolved by arbitration. The clause constitutes a valid and binding arbitration or contractual agreement to arbitrate and arbitration is the exclusive remedy. Arbitration clauses with language such as rise out of or relate to are interpreted broadly under Illinois law. Appellate says you've waived that. The argument that we waived was made and with regard to waiving that argument, waiving that, what happened in this situation was we didn't have the opportunity to review the contract immediately. We had filed a motion to dismiss prior to discovering that there was a contract that included that clause. That motion to dismiss was not a vote of argue. I realize this is a matter outside of the record, but just for my personal interest, how would you not have known there was a contract for 9-5? My understanding is that the contract was seized by the investigating police officers and all the documents that were associated with the funeral home were. That's how we were unable to know about that until we discovered it. As soon as we discovered it, we withdrew the motion and filed an amended motion. At any rate, both in this case, both of the plaintiffs' representatives signed the contract, and this is a contract for cremation services that were provided by my clients. The signature was, again, immediately below clear and conspicuous language that indicated that arbitration was the method of resolving any disputes. So as far as the enforceability and scope of the arbitration agreement, the agreement, again, is clear, prominently presented. It is a valid and binding contract. As far as arguments about whether or not this was substantively unconscionable, the plaintiffs have argued that it's unconscionable. They contend the arbitration clause is invalid because it's one-sided and binding only the plaintiffs to arbitrate. However, Illinois law does not require mutual promises to arbitrate if other valid consideration exists in a broader context. For example, services rendered for payment. In this case, there was a broader contract and an agreement, and that was the contract for services, the cremation services in exchange for a fee. The arbitration agreement is not so one-sided or oppressive as being unconscionable. As far as procedural unconscionability, the argument made by plaintiffs is that this was a contract of adhesion. It lacked the opportunity for negotiation. However, adhesion contracts are common and not inherently unenforceable. The arbitration clause in this case, again, was conspicuously displayed. It was immediately above the signature. It was in bold, printed capital letters, and it provided a clear notice. The plaintiff's representative, in both cases, acknowledged and electronically signed the agreement without later providing contrary evidence to the support that they weren't aware of the agreement. So arbitration was the expressly agreed-upon method of resolving any issues in this case. What about the fact that the arbitration clause is so short and succinct? Like it doesn't provide who the arbitrator is going to be, who's going to pay the fees? This is a general arbitration clause, and the fact that it isn't as detailed doesn't necessarily undermine that clause because it doesn't include those details. As far as the details that the plaintiffs argue that should have been in that, like, for example, limit on damages, et cetera, what it addresses is all the claims, any claims made by the plaintiff. And as far as other issues, those could be resolved or decided or determined pursuant to the arbitration proceeding. Didn't they also argue that it provides for Ms. Bricker or whatever, they have to arbitrate it, but the funeral home or the facility does not? Is that, is my recollection correct? There isn't anything specifically saying that the funeral home does not. What the arbitration clause says. Well, absent language saying that they do, we can't assume that they have some obligation to arbitrate, can we? There's an obligation to arbitrate all claims by the plaintiff. That's correct. There's no specific obligation if the funeral home had a claim to arbitrate that claim. That is correct. I'm trying to figure out what would they need to arbitrate. That's the question. What would they need to arbitrate? For example, if it was a non-payment issue, I guess that would be the one thing, but there's already been exchange of payment pursuant to the contract. So I'm not really sure what they would arbitrate, but that being said, even though it's one-sided, that's not fatal to the arbitration agreement. So what we're arguing is there's an absence of procedural unconscionability. In this case, it's very clear that the provision is included in the contract. The plaintiffs, in both instances, had a reasonable opportunity to review and understand the agreement prior to signing. In fact, with one of the plaintiffs, they had a number of days to review and sign. The contract was not hidden in fine print or presented as an adhesion contract that deprived the plaintiffs of meaningful choice. Regardless, contracts of adhesion are not automatically unenforceable in Illinois. So the Illinois courts favor arbitration. There's a strong policy supporting arbitration. It's quicker. It's a more efficient alternative than litigation for resolving disputes. Even if some claims are not arbitratable in this instance, Illinois law supports compelling arbitration of arbitratable claims and staying the rest to avoid duplicative procedures. In summary, the arbitration was valid, validly formed, presented, free of unconscionable terms, encompasses all parties and claims involved. And as a result, we're asking that the arbitration agreement be enforced and that the complaint be dismissed with prejudice. As I believe you pointed out, Section 3 of the Uniform Arbitration Act provides an arbitrator will be appointed in a manner agreeable by the parties. Correct. If the method of appointment cannot be agreed upon by the parties, the entire arbitration agreement shall terminate. What does that mean? With regard to the arbitrator being appointed pursuant to agreement, if they cannot agree to arbitration, that would mean that they would have to probably resolve that with the court, I would imagine. Unless there are other questions, I will preserve the rest of my time. How about the agency relationship? So the argument that not that only one of, I guess, for a more specific question about your question, Okay, how about this?  You in the contract is defined as the buyer and the co-buyer, is that right? Yes, sir. There are only two signatories possible on the contract, buyer and co-buyer. Yes, sir. What is there about this contract that somehow impliedly establishes an agency relationship to any and all other relatives that might be otherwise involved in this? Well, the plaintiff's argument caught one of the reasons for arguments that is unconscionable is because we're seeking that the arbitration clause be applied to those non-signatories. But courts in Illinois and federal jurisdictions recognize the equitable estoppel factors, especially in class or joint claims involving shared facts. If the plaintiff's asserted derivative claim based on closely linked to the cremation agreement, then they may be equitably bound to the arbitration clause under Illinois common law or those FAA principles. As far as the plaintiffs that were non-signatories, they received the benefit, arguably, of the contract as well. Actually, they did. Their argument is that they would, pursuant to the contract, they would have received the benefit of the cremation services. What in the record suggests that any non-signing party is authorized to put Elizabeth or Aisling to sign the contract? I'm not sure that it's in the record other than our understanding, and based on the complaint, in both cases, that the complaint is brought by all of the plaintiffs, that this representative of the plaintiffs entered into the agreement, and the presumption is that was on behalf of all of the plaintiffs. We're not talking about parties in litigation. We're talking about parties that you're seeking to bind to the arbitration agreement by the terms of the contract. The contract you want to rely on as being clear, succinct, obvious, well, that same contract defines you as the buyer and the co-buyer only. It doesn't indicate that so-and-so on behalf of any heirs assigns, et cetera. How do you establish an agency relationship based on this contract? Again, based on understanding that this was a representative of the family that wanted these services. If the court holds that the other person... Is that what the record said? That they came in saying, look, we represent A, B, and C in addition to ourselves? The contract does not necessarily say that. That's true. If the court determines that only the signing party, the signatory, is bound by that contract, then what the court must do is at least stay any other action until that arbitration with the one bound signatory is resolved. So, again, in summary, we'd ask that the court reverse the trial court's denial, dismiss the plaintiff's complaint with prejudice pursuant to 2619A9, and enforce the arbitration clause compelling arbitration pursuant to the terms of the agreement. And, again, if the court finds that it's only applicable to one party, the signatory, that the arbitration proceed relative to that one party and any other action be stayed. All right. Thank you. Thank you. We'll have an opportunity on revote. Counsel for the appellees. Thank you, Your Honor. And may it please the court. My name is Joseph Craven. I represent, along with Patrick Sheehan, the Woods family in one of the cases consolidated in this appeal. Mr. Wilson is here on behalf of the Bricker family, but as counsel for appellants stated, these are very almost identical orders entered by the lower court, so our arguments are likewise consolidated here for oral argument. We believe and would urge this court to affirm the lower court's order refusing to enforce the unconscionable arbitration clause and would ask this court to do so for at least three reasons. The arbitration clause at issue is unconscionable based off its plain language, it's unconscionable based off the practical impact of following the language in the clause as written, and also the disparity in bargaining power that is evident from the record demonstrate both substantive and procedural unconscionability. What kind of bargaining power do you have in a cremation contract? Well, in this case, we have a company sending a form contract. The record demonstrates they've utilized for years, sending a contract to a grieving family member. I recognize this isn't necessary. That's the nature of the beach, to cremate other people, so it's going to be going to people who are dealing with having to deal with their loved ones. And completely acknowledge and agree adhesion contracts, form contracts, are a fact of daily living at this point. Corporations send them out to consumers at all points. But in looking at the totality of the circumstances, which is what we're asked to do in these unconscionability cases, the facts demonstrate we have an unlegally educated consumer, a family member reaching out to a corporation saying, my loved one passed away, I need your help. They're grieving, they've lost a loved one in the Woods family the same day, saying, I need your help. I need to entrust you, saying, I need my loved one cremated for you to perform this service. Were they under some sort of time constraint? Generally, not a firm, thou shalt must cremate by a certain date, but when you've lost a loved one, you typically don't sit around waiting weeks or months to move forward with funeral proceedings. The question is, were they under some time constraint to sign the contract? To sign the contract, just to begin the cremation proceedings. Not a legal time frame. Yes, they could have shopped around. Did one of the parties have days in which to decide? The contract was available to them for days, but in the Woods family situation, the record actually demonstrates, despite it being available to them to review for days, they had no ability to even edit their name. They consistently email from Ashleen Woods, even though the contract was written and the PandaDoc, the electronic document platform, was preregistered to have her name as Ashley Woods. In our underlying briefing, as part of the record, we attached an email saying, Mr. Hines, I'm asking you again, in written form for, I believe she says the third time, to change my name. My name is not Ashley, it's Ashleen. You're in a difficult service where family members are entrusting you. You could at least give me a modicum of respect and spell my name right. She didn't have the ability to spell her name correctly, let alone have the ability to negotiate terms. Is that affecting the legality of the contract? The contract as a whole, no. In terms of the arbitration clause, yes. Our position is that's an element of procedural unconscionability, demonstrating that it should be held unenforceable. Because her name was misspelled. As an element of demonstrating the lack of bargaining power. Both the Kinkle and Razor courts recognize that adhesion contracts, yes, are a fact of daily life. I don't think they're bargaining over name. They're bargaining over cost of services, aren't they? Well, they're bargaining over, apparently, under defendant's position, also whether or not parties should be bound to arbitrate. Well, that's their issue. Right. And if they're only bargaining over cremation in exchange for money, that should be the only bargain. This is included as a notice, not even necessarily a clause, just at the bottom of page 3 of 3 on an electronic document that says, you shall arbitrate. Seller has no... That's interesting because the record contained one page. But at the bottom... Did you ask to supplement the record? No, you're right. Additional pages? But at the bottom of that page, it says page 3 of 3. That's my reference, is that it says on itself page 3 of 3, the document that in the Woods family case, in the bottom right-hand corner, the Panda Doc document says page 3 of 3. But yes, they only attach one page as their exhibit, but it is apparently on its face. So are the other two pages relevant? I would say so, yes. Then why didn't you ask to have them added as part of the record? Because from an unconscionability perspective, the only thing that's relevant is this arbitration clause. Well, gosh, I'd think you'd want to argue that, look, they had to go through two other pages of writing before they even got to that part. That wasn't even argued, was it? No. It wasn't even mentioned in your brief. Correct. You don't mention in your briefs anywhere that there's more than one page. I believe that's correct, Your Honor. Okay. But that goes to the issue of procedural unconscionability, of whether or not there's an unfair bargaining practice. But I'm confused because that seems to me to be the opposite of what you want. If you were trying to say that they've had to sort through, and these grieving people have had to sort through three pages of stuff before they even get to the signature line, that would seem to be more supportive of your position than leaving it as one page with everything in bold type at the very bottom, right above your signature. And in looking at this document, yes, I agree it's in bold print in all caps. But in looking at the document, most of it is in bold. There's nothing that this was presented electronically, but if it was slid across the table in an old-fashioned negotiation, there's nothing directing anyone's eyes to that provision on just this page. If it was just one page, there's nothing indicating, Aisling Woods, you should look here. The majority of this document is in bold. What if there's more provisions about arbitration on the other pages? Then if that goes to the issue of waiver, defendants have waived their ability to enforce those terms. We in the lower court did raise the issue, as Judge Knoll's order states, and Your Honor referenced, there are no terms to this clause other than buyer shall arbitrate. There's no rules of arbitration that shall be followed. There's no distinction of if it's a single arbitrator or a panel. There's no cost or fee shifting provisions. It simply says buyer shall arbitrate against seller. And that in and of itself demonstrates not just gross one-sidedness, but complete utter one-sidedness. Most of the case law at issue analyzing substantive unconscionability uses that kind of adverb, grossly one-sided. Well, I'm trying to figure out. I don't want to be less than serious of this. I'm trying to figure out how many sides are there to a contract for cremation. You're asking to have a loved one cremated. They're going to tell you what the price is when you sign a contract. What is it you're going to negotiate? In terms of the contract? Right. A consumer reaching out thinks it's just that. They shouldn't have to be negotiating arbitration clauses and shouldn't have to suspect and worry that there's an arbitration clause buried in there, regardless if it's a one-page or a 20-page contract. Buried is a little strong, but go ahead. But that, again, goes to just the procedural side. From the substantive side, and the courts are clear, substantive unconscionability can be enough on its own to carry the day. Procedural can be enough to carry at the end of the day. Most of the time it's a combination of the two. Is there any indication in the record that the defendant basically slid this across the table to people and said, look, you've got to sign this before you leave? In the record, no. Other than the fact that it was sent electronically with no ability to even edit names. It's sent electronically to them? From Family Care Cremation, to in the Woods family, to Ashley and Woods email. So they weren't even sitting there negotiating. No. It was sent via email. So they have it in the privacy of their home, with their own support systems, whatever it might be around them, in the luxury of their easy chair, being able to sit there and peruse this contract. As they sit there and grieve the loss of their loved one. Absolutely. But if that were the case, then any case involving grieving parties somehow then creates litigation. I don't think that's where we are. Not necessarily, because the contracts in Hwang, for example, the contract is entered into well before the issues at hand. There's the nursing home situation of a resident filling out an application that includes... Well, she was required to sign this the day she was being admitted. Right. Okay. That's a little different. My point is, in that case, the grieving hadn't begun yet. Here, the grieving has already started. They're calling, asking for help. They're a consumer against an entity that submitted an adhesion contract to them. There's nothing in the record demonstrating that there was an opportunity to negotiate whatsoever. The terms couldn't be switched. It was, here's the contract, take it or leave it, sign here, and we'll perform the services. It's not even that they sent it to them. Correct. They're not adding anything verbally. They're just saying, here's the contract. Right. Okay. Go ahead. But from the substantive side, it is completely and utterly one-sided. There is no obligation on seller to do anything. Well, they've got to perform the services. Correct, but in terms of the arbitration clause in regards to solely substantive unconscionability. What would they be arbitrating? If they were to arbitrate a case, it could be a contractual claim, but that question in and of itself demonstrates how one-sided this is. This isn't just an arbitration clause binding buyer to arbitrate contractual claims, but they are bound to arbitrate any claim, whether it be the situation before this court of loved ones' cremains being lost and misrepresentations being made, whether it be a simple failure to do it in a certain time frame, a contractual dispute. If there's a premises liability case of a slip and fall in the funeral home, if, God forbid, an issue happens with the hearse and there's a car accident, any claim by buyer has to be arbitrated against seller. Speaking to that, defendant's position, which they're briefing and what counsel just asked this court to do is reverse the lower court's decision to dismiss all claims by all plaintiffs against all defendants, demonstrates how defendant's interpretation of this is wholly both procedurally and substantively unconscionable. Well, I'm assuming that that's based on their agency art. Obviously, if they're not successful in the agency argument, we're only dealing with the parties in front of us. And then even as a result of if it's just Ashleen Woods versus family care cremation, that creates more substantive unconscionability. It not only creates a cost disparity of the family having to be split and proceed in two different manners, but arguably maybe more than two manners. Ashleen still has claims against the three other non-signatory sellers in addition to family care cremation. The other Woods family members have their claims against family care cremation who's in an arbitration. It becomes real messy, real fast from a procedural side. And so even if the narrow interpretation is enforced, there's a cost disparity. It also leads to the problem of our Woods family complaint is filed as a class action. If Ashleen's claim where she is filed as the purported class representative, if that goes away, she no longer has the opportunity to potentially secure attorney's fees under the common fund doctrine. We're getting a little far from the language of the contract. But when it comes to substantive unconscionability and procedural unconscionability, how is Ashleen Woods supposed to know that by signing this, she's losing that opportunity? Because this is all a claim. Right. But how is she supposed to know that that includes her opportunity for attorney's fees? That's not the question in front of us. But it's an element of substantive unconscionability that she loses in terms of unfairness. That's a fact that's sacked against family care cremation and trying to arbitrate its claims against Ashleen Woods Arnett. And as the appellants point out, Section 3 of the Uniform Arbitration Act provides an arbitrator to be appointed in a manner agreeable by the parties. If the method of appointment cannot be agreed upon by the parties, what happens to the entire arbitration frame? According to that language, it gets terminated. And then it also begs the question, is that an arbitrable issue or a circuit court issue? There's no terms in this arbitration clause about who decides what, when they decide what, who has to pay for what. None of those terms are in there. In a lot of other cases, there's analysis of the defendants, the seller, whichever term we want to use. Well, in exchange for buyer giving up their right to trial by jury, they will pay for the cost of arbitration. In some cases, they say even the issue of arbitrability is to be decided by an arbitrator and will pay for that initial stuff. There's no negotiation. There's no giving up of that. In some cases, in Hwang, for example, there was an attempt to kind of hide in legalese that defendants will give up the right to trial by jury, except in these cases, which are the most likely cases that we would ever bring against plaintiffs. This, there's no even legalese trying to hide it. Sellers don't have any obligation to pay for anything. They don't have any obligation to arbitrate anything. In this situation, they're seeking to compel nearly 800 families into individual arbitrations, which by itself is a private dispute resolution method. Yes, there's no confidentiality clause expressly in there, but in the Hwang case analyzing confidentiality, it speaks that the benefit isn't necessarily confidentiality, but that the defendants gain a wealth of knowledge from both a substantive and procedural perspective on precedent on how to proceed with those cases. Plaintiffs here lose that advantage under their interpretation of the agreement. 800 families have to arbitrate their own individual cases, only being able to find out who did what and who tried what by calling everyone up and saying, did you try this, did you try that. There's no court of public record for them to look that precedent up. Defendants, under their interpretation, get to try and keep trying and gain that wealth of knowledge as the Hwang court points out. The other issue and another just general element of substantive unconscionability is plaintiff's buyer doesn't give up just their right to trial by jury. It ends by saying you waive your right to appeal. Sellers can appeal all they want. Buyer has no right to appeal under this agreement. It is wholly and completely one-sided. In the Kinkel court, they, in analyzing other cases, say that gross one-sidedness is actually an under-inclusive definition of substantive unconscionability, but say that surely it's accurate in defining substantive unconscionability that if something is grossly one-sided, that in and of itself justifies a finding of unenforceability because of substantive unconscionability. In that case, it was grossly one-sided. In this case, as Judge Knoll points out, it is wholly one-sided. No ifs, ands, or buts about it. It is wholly one-sided. Going back to the issue of buyer versus seller, as this court pointed out, there is nothing demonstrating an agency relationship when it comes to what Ashlene Wood Zarnett, who she was signing on behalf of. The contract was drafted by Family Care Cremation, sent to Ashlene Wood Zarnett. She didn't change a period or a comma. The contract was drafted by them. If they wanted buyer to be defined more broadly, or for her to identify family members, or for her to identify heirs at law, depending on umpteen different situations, Family Care Cremation could have done that. As the Kinkel Court says, by drafting the agreement, they are saddled with the repercussions of the provision as drafted. They could have drafted it more broadly. They chose not to. To that point, the issue of waiver was briefly brought up. I believe counsel referred to how they said, we were unaware of it until it was provided in discovery. By we, I don't mean to speak for counsel, but I believe he's referring to counsel themselves. The defense counsel didn't have the contract, because it may have been seized by law enforcement in an investigation, but that doesn't take away, that ignores the fact, that the contract was drafted by Family Care Cremation. As pled in our underlying briefing, had been used in nearly 800 other family situations, somebody put these words on the piece of paper. They knew they existed, and they handed it to the different plaintiffs. Counsel may not have known about it, the party did. The case law makes clear, it's not whether or not the counsel waived the right, it's whether or not the party acted inconsistently, with their right to arbitrate. It's our position, in our underlying Woods case, they clearly did act inconsistently, because they had to have known about it. They wrote it. There's no question about who wrote it, in regards to whether or not counsel knew about it. In our case, months before they filed this motion to dismiss, we served other copies on counsel. Those are attached in our response to their motion to dismiss. We subpoenaed the documents from the IDF PR offices, as part of their investigation, and we served identical copies of this agreement, with the arbitration language in the agreement, that they didn't learn about until the day before they filed their motion to dismiss on this issue. The record shows we served it on them in June, and they didn't file this motion to dismiss until months later. The party knew about it, the counsel knew about it, they acted contrary to their right to assert it, but that doesn't take away from the fact that it, in and of itself, is unenforceable. It's wholly one-sided, provides no benefit to the plaintiffs whatsoever. There are practical implications of both the cost disparity and confidentiality issues. And one last point, in regards to procedural disparity in bargaining power, there's an affidavit from Mr. August Hines, who says even he didn't know what the contract meant. How can it be said that Ms. Ashlene Woods-Arnett knew what she was signing? If Albert August Hines, a co-defendant, didn't know what the family care cremation document meant? It can't be said that an untrained consumer knows what the drafting company's employee meant by a piece of language if he himself didn't know what it meant. Both can't be true. I see my time is up, and so I thank the court for their time. I would simply request that this court affirm the lower court's decision of not enforcing the arbitration closet issue. Thank you. The defendants did not waive their right to, their contractual right to arbitration. Their initial motion to dismiss was never heard. And it did not advance in court. They became aware of the arbitration clause only in late August 2024, after the plaintiffs revealed the existence of a contract at a hearing. Upon obtaining the contract in early September, they moved promptly to withdraw their prior motion, revise the motion, and compel arbitration at that point. Any delay was due to lack of information. The relevant records were seized by law enforcement. If there was minimal discovery conducted, minimal discovery is allowed under rules of arbitration as well. There was no harm in that delay. Counsel, is there a difference, as opposing counsel mentioned, in attorneys not knowing about that and the facility would have had knowledge of the arbitration clause in the contract? I mean, it calls for speculation on that knowledge, and I think the affidavit shows that at least that individual didn't know the weight of the document. Knew of the document, though, correct? And that's... I mean, would have had to. I don't know. I don't know the answer to that question. So all I know is that there was no significant delay in the proceedings, the underlying proceedings, and we didn't waive because we withdrew our motion prior to it being heard, even though minimal discovery may have been conducted or was being conducted at that time. So our argument is that it was not waived. As far as, again, the argument that emotional distress or grief interfered with meaningful consent, Illinois courts are reluctant to avoid contracts on emotional grounds as evidence of active misrepresentation, caution, or incapacity. None of those are alleged or asserted by the appellees in this case. The absence of arbitration rules or cost information in an arbitration clause does not render the clause invalid per se. Courts have required that, assuming the costs are oppressive or some other additional information is necessary to demonstrate a greater financial burden on one party versus the other. Right now, the appellees are just asking to speculate that, oh, they'd have to bear the costs or they'd have to bear the legal fees, and the court should not speculate. So, again, we'd ask that the court reverse the trial court, enforce the arbitration clause that was clear, bold print, right in the face of the contract, right above the signature, and at least the signatory had an opportunity to review that and had an opportunity to not sign it. And, yes, they did in both cases. So, I see no questions. Thank you, counsel. Thank you. Thank you both. We appreciate your arguments. We'll take this matter under advisement. The court stands in reason.